CASE 7—HUSBAND AND WIFE—APRIL 3, 1884.

# Golding v. Golding.

### APPEAL FROM CAMPBELL CIRCUIT COURT.

1. A gift by the wife to her husband through a third person (when she is without children) of land shall ordinarily be regarded as in accordance with her wishes, but when the wife assails the gift as the result of an improper influence over her by him, the character of the gift and the circumstances under which it was made may often be sufficient to evince improper influence on the part of the husband, although actual fraud is not established by the evidence.
2. Appellee having obtained a divorce from appellant in Missouri, should be compelled to surrender to appellee all lands obtained by him from her since their marriage to which he holds the title.

C. W. HAWKINS FOR APPELLANT.

Upon the issues presented in the pleadings it is manifest that unless the appellee affirmatively and successfully attacks the Hunter deed it must stand that the *onus* is upon the appellee. There is no doctrine better settled.

Married women are authorized to execute deeds of conveyance in conjunction with their husbands, and, when made, are as effectual as if made by a *feme sole*. They must be considered for all purposes as the voluntary act of the *feme covert*, and effectual for all purposes until the contrary is shown by competent evidence. Inasmuch as the

deed was made prior to Sec. 425 of the Civil Code, it has no applica-- tion to this case. (Todd's heirs v. Wickliffe, 18 B. Mon.; Welles v. Woodward, 2 Bush, 217; Phillips v. Phillips, 9 Bush; 78 Ky,,. 329; 10 Bush, 574; Coolley Sed., 370: 285.)

F. M. WEBSTER, W. H. MACKOY, and W. LINDSAY for AP- PELLEE.

The pleadings and evidence show that the deeds through which appellant claims title to and an interest in a portion of appellee's estate were procured by fraudulent coercion, with the intent of using the legal advantages secured through them, and for the purpose of holding that estate to his individual uses.

Section 425 of the Civil Code is clearly applicable to this case, and the judgment of the circuit court compelling appellant to re-convey all the lands obtained by him from her. (Civil Code, secs. 425, 837; Gen-- eral Statutes, sec. 6, art. 3, chap. 42; Phillips v. Phillips, 9 Bush, 184; Williams v. Gooch, 3 Met., 488, 499; Harding v. Alden, 9· Greenleaf, 140; Rogers v. Rogers, 3 Met., 365; Sedgwick on Stat- utes, 2d edit., p. 309; Kent's Com., vol. 1, p. 455; Berthelemy v. Johnston, 3 B. Mon., 91; Bishop on Marriage and Divorce, 6th edit., vol. 1, sec. 697; Wilson v. Bull, 10 Ohio Reports, 250; Darlington's. Appeal, 86 Penn. St., 512; Myer's Code, sec. 748; Hughes v. Shreve, 3 Met., 548; Chi. R. Co. v. Dunn, 548; White v. Steam Tug, 6 Cal., 462; Johnes v. Johnes, 3 Dow, 15; West v. West, 2 Mass., 223; Cabell v. Cabell, 1 Met., 328; Todd's heirs v. Wickliffe, 18 B. Mon.,. 908; Stiles v. Stiles, 14 Mich., 72; Fry v. Fry, Paige, 461.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

In May, 1868, the appellee, then a young widow, married the appellant, a physician residing in the city of St. Louis. At the time of her marriage she was a resident of the city of Newport, in this State, but re- moved shortly after the marriage to the domicil of her husband. She owned at the time real and personal estate exceeding in value $100,000. The most of the property was in real estate, located in Campbell and Kenton counties and in Cincinnati, Ohio. The husband owned but little, if any, real estate, but seems to have procured from his wife in a short time after the mar- riage a conveyance to an undivided interest in her

realty for life, with the title in fee in the event his wife died without leaving children, he being the survivor.

In order to pass the title a conveyance was made to John A. Hunter of this real estate by the husband and wife, and then a re-conveyance by Hunter to Golding and wife, by which the husband was invested with a joint interest for life, with the fee in him if the wife died first without issue. The conveyance was made in the year 1869. Prior to the execution of this conveyance the wife, appellee, had executed a will, the provisions of which gave to the husband a similar interest, but having been advised that she could not dispose of her general estate in such manner, the conveyance to Hunter was resorted to, so as to accomplish the intention of the parties, as shown by the draftsman of the instrument. Broadhead and Hunter, who were employed as counsel, the one writing the will and the other the deeds, testify to facts from which it must be inferred, if there was an absence of other testimony, that the execution of each paper was in accordance with the wishes of the appellee, nor had they, or either of them, any facts before them authorizing any other conclusion.

A short time after the execution of the conveyance by which the husband was invested with title, he began to waste the estate and indulge in habits of dissipation, resulting in a separation between them, and finally in a judgment for a divorce in favor of the wife, restoring her to all the rights and privileges of an unmarried woman.

The present action in equity was instituted in the

Campbell Circuit Court by the appellee, the wife, seeking to cancel the conveyance made to her husband and re-invest in her the title to what was left of the real estate conveyed by the deed from Hunter.

The relief is asked upon the ground, first, that the husband fraudulently procured the execution of the deeds, and by an improper exercise of his influence over appellee ; second, that the appellant's interest in the property was obtained by him without valuable consideration, by reason of the marriage, and, having obtained a divorce, she is entitled to be restored to the property by reason of the statute.

We deem it only necessary to consider the first ground relied on by counsel, as the divorce, with alimony, was obtained in the St. Louis Circuit Court, and is now pending in the Supreme Court of Missouri, and was undisposed of at the termination of this action.

This court, in the case of Todd's heirs v. Wickliffe, 18 B. Monroe, and in Kennedy v. Tenbroek, 9 Bush, as well as in other cases, has held that a conveyance like this executed by the wife to the husband through the intervention of a third party, is *prima facie* fair, and the burden is on the party attacking the conveyance to show the fraudulent intent.

Those cases involved controversies between the heirs at law of the wife and her surviving husband, the former attacking the conveyances for fraud and want of consideration in their execution. It is not unreasonable or unnatural that an affectionate wife, without children, should make the husband the object of her bounty in preference to those who would be her heirs at law if the estate had been left undisposed of, and, therefore,

fraud is required to be shown before the Chancellor will disturb the conveyance. Nor will this rule be departed from when the wife, during her life, assails the conveyance as having been obtained by fraud, or the exercise of an improper influence by the husband over her. The Chancellor, at the instance of the wife, will scrutinize closely the conduct of the husband and the motive influencing the wife to part with her estate, and when the husband, having won the affections of his wife, has such an influence over her as to make her entirely subordinate to his will, the Chancellor will not undertake to adjudge that the parties are dealing at arm's length, and hold the wife to the contract, as he would a stranger. The husband will not be allowed to take advantage of the marital relation, so as to invest himself with title to the wife's estate, and then insist upon her ability to resist his importunities, as a reason for making her stand by the executed agreement, investing him with title. At the time the will was executed and the conveyances made, the wife was living in St. Louis, many miles distant from those interested in advising her and protecting her estate, and, at the instance of counsel employed by the husband, executed the writings by which she gave to the husband control of her estate, and vested him with such an interest as enabled him to dispose of at least one-half of her fortune. It is not to be expected that the husband or the wife would have furnished counsel preparing the deeds with the evidence of the wrongful purpose of either, and, therefore, with an honest purpose upon the part of the draftsman, these writings were prepared and signed by the wife.

The appellee was an affectionate and loving wife, and seems to have appreciated to the fullest extent the obligation of the marital relation, while the husband was a man of indomitable will, and his manner and wishes always sufficient to obtain his wife's assent to his views. She was an unhappy woman, and her treatment by her husband, as one witness at least states, was not like that of other husbands to their wives who boarded at the same house. That she was compelled, by his treatment of her, to leave him is demonstrated by the proof, and, if not, by the judgment of divorce, awarding her fifteen thousand dollars as alimony and releasing her from the marital relation.

When separated from the husband by reason of his treatment of her, the appellee finds him invested with title to one-half of her original estate, that had been left from the wreck made of it by the execution of mortgages, and in effecting loans for the support of both. Colonel Taylor paid to the appellant at one time near nine thousand dollars—nine thousand dollars was raised on mortgages upon Cincinnati property—rents had been collected amounting to $1,800 a year. The appellant sold real estate in Newport amounting to $16,000. He sold land in Ohio amounting to $6,000. He had received and disposed of her estate to an amount exceeding fifty thousand dollars, and is now insisting, regardless of the separation between them, that he is entitled, under the deed from Hunter, to an equal interest in the remainder, or to his rights, under that conveyance, whatever they may be. The appellee, at the time of her marriage, was not involved in debt; her real estate was unincumbered, and she held notes of the value of several thousand dollars.

If this was a suit in equity for partition between the parties, no marriage relation existing, what sort of an account would the commissioner report for the consideration of the Chancellor? One tenant has converted to his own use a sum exceeding his entire interest in the estate, and is still insisting on a partition of what is left in equal proportions. The only equitable settlement would be to compel the tenant to account for the estate wasted by him, and, having received his full share, the balance should be assigned to his co-tenant.

In this case the amount received by the appellant exceeds in value that which remains, and the estate left is incumbered by mortgages and liens for taxes that must be discharged by the wife. The husband obtained the conveyance without any other consideration than love and affection. Such is the purport of the deed, and there is nothing in the record showing any valuable consideration moving from the husband. It was his duty to support the wife, and while it was proper and equitable that her estate should contribute for that purpose the fact that she may have enjoyed, in conjunction with her husband, the proceeds of her estate is no response to her claim for her own estate, the title to which is vested in him by reason of his influence over her, and for which he has never paid one dollar. The love and affection prompting the execution of the conveyance should have been reciprocal, and when the husband, taking advantage of the wife's love for him and his influence over her, accepts a conveyance to her estate, and then causes her to abandon him by reason of his cruel treatment, he should, in equity, be required to restore that to which he acquired no title by reason of his rights as husband.

The will of the wife was so subordinated to that of the husband, as the proof shows, that she made purchases of such clothing only as he selected for her, and as soon as he obtained title to her estate, so as he could dispose of it for his own purposes, the alienation of all good feeling began on the part of the husband, and the wife's affection and property were lost and wrecked by one who must have acquired both from selfish motives. It requires no statutory provision to enable the Chancellor to restore the property by the cancellation of the deeds under such circumstances as surrounded the parties in this case.

By the rule of the common law the wife has no power to bind herself by contract. "Her time and labor, as well as her money, are the husband's property," and while this doctrine has been modified to some extent by our statute, so far as the wife's earnings are concerned, to protect the wife as against the husband's creditors, the husband still is entitled, by virtue of the marriage, to the personal estate of the wife, and to her choses in action when reduced to possession. As to her real estate, he has no interest as against the wife, and, in the present case, should the husband survive the wife, he would not be a tenant by the courtesy, as there has been no issue of the marriage. He acquired the title to her real estate by the deed from Hunter and in no other way. It is not pretended that Hunter had any other interest than that of a mere trustee for the purpose of conveying the estate back to the husband and wife, and the husband having obtained the title without any valuable consideration, and then causing the wife to separate from him, the Chancellor, in a controversy be-

tween the husband and the wife, will not require proof of actual coercion in the execution of the conveyance, in order to cancel it. The controlling will on the part of the husband is shown to exist in this case, and whether exercised at the time the deed was executed is immaterial, as the character of the transaction and the sequel to its execution sufficiently establish its exercise. It was a gift from the husband to the wife, and ordinarily, as between the husband and third parties, the wife's action in giving her estate to the husband, particularly when she is without children, will be regarded as in accordance with her wishes; when the wife herself assails the gift as the result of improper influence over her on the part of the husband, the character of the gift and the circumstances under which it was made may often be sufficient to evidence improper influence on the part of the husband, although actual fraud is not established. A married woman, having the power to dispose of her separate estate, is laboring under no such legal disability as will prevent her from giving it to her husband, but, at the same time, says Justice Story, "courts of equity examine every such transaction between husband and wife with an anxious watchfulness and caution and dread of undue influence, and if they are required to give sanction and effect to it, they will examine the wife in court, and adopt other precautions to ascertain her unbiased will and wishes." (2 vol., Story's Equity Jurisprudence, sec. 1,395.)

The same rule should apply in actions between husband and wife to set aside a voluntary conveyance or gift of the wife's general estate to the husband, and while the burden of proof is on the wife, the facts and

·circumstances antedating the deed, as well as those sub-.sequent to·its execution, will all be considered, and in this case they have satisfied the Chancellor, as they have this court, that the conveyance should be can- ·celled.

It is attempted by the appellant to show that large .sums of money had been paid by him for the wife on .account of her extravagant mode of living, and that he expended greatly more than her income. This proof is in singular contrast with her economical habits be- fore the marriage, and no such consideration can prop- erly be suggested to the Chancellor as a reason for sus- taining the validity of the conveyance. The appellant has disposed of all the wife's personal estate to which he became entitled by reason of the marriage, and her real estate, in which he had no interest, except under the deed in controversy, he should be compelled to surrender. This he has been required to do by the .judgment below, and the same is therefore affirmed.