# City of Somerset v. Gardiner.

(Decided March 8, 1929.)

W. O. HAYS and MARGARET HAYS for appellant.

WESLEY & SON for appellee.

,OPINION OF THE COURT BY COMMISSIONER DRURY—
Affirming.

The city of Somerset seeks by this appeal to reverse a judgment for $1,400 recovered against it by Mrs. Margaret Gardiner, for the change of the grade of the sidewalk in front of her property. Her petition is rather short. She merely alleges that she owns a lot on the west side of Main street on which she has a house that is being used as a hotel, and that the city has, without her consent, changed and raised the grade of the street and sidewalk by which the market value of her property was diminished, injured as she says, $2,500. As a part of its defense, the city admits the doing of this work, and alleges that this sidewalk was reconstructed to conform to the original lines and grade of the sidewalk heretofore established. Plaintiff controverted this by reply, thus completing the issue upon which these parties went to trial, with the result noted.

The city filed eight grounds for a new trial, which we shall regroup and discuss as we get to them.

Grounds 1 and 2 were directed to the action of the court in admitting and excluding evidence. To understand this question, it is best that we should state some of the facts. Three different sidewalks in front of this Gardiner property figure in the record. One was a common brick sidewalk that was laid at some time in the remote past, concerning the laying of which there is no evidence at all, but which Mrs. Gardiner testifies was very old and worn in 1896. At that time it was removed and replaced by a vitrified brick sidewalk, and this vitrified brick sidewalk was, in turn, replaced by the sidewalk now existing of the grade of which Mrs. Gardiner is complaining. In 1895 the city adopted an ordinance for the construction of sidewalks along certain streets, including a sidewalk in front of the Gardiner property, and in that ordinance, which we shall call the ordinance of 1895, it is provided:

"The sidewalk shall be graded in accordance with the designs and dimensions shown upon the

drawings of the engineer on file in the office of the city clerk. . . . No paving material to be placed before the graded, rolled or rammed surface shall have been finally inspected and approved by the Board of Council for that purpose.

"Sec. 4. On the foundation prepared as hereinbefore described a bed of clean sharp sand, two inches deep, shall be spread upon this bed of sand vitrified brick are to be laid flat, at right angles to the line of curbs as closely and compact together as possible. . . .

"Sec. 12. The work to be done as provided by this ordinance shall be done at the cost of the owners of the ground fronting the said sidewalks as provided by law, the said cost to be apportioned among said owners as provided by charter for cities of the fourth class."

Mrs. Gardiner testified that about 30 years ago, under order of the city council, the common brick sidewalk was taken up and a sidewalk was laid in front of her property that was made of vitrified brick; that it was put down by order of the city council; and that she paid for it. The proper way to have established this would have been, if possible, to have produced the books and records of the city to have shown that; but both Mrs. Gardiner and her witnesses were allowed to testify to those facts, without objection made at the time. For the orderly conduct of trials, the discovery of the truth, and the establishment of justice, certain rules have been formulated relative to the method of proving facts, and if parties insist upon it, those rules should be observed; but within reasonable limits, parties are entitled to try their lawsuits in such manner as pleases them, and the requirements of these rules relative to the method of proving facts may be waived, and they are waived when parties, without objection, permit facts to be proved in an irregular manner, and the city by not objecting waived the right it had to require its acts and doings concerning the construction of this vitrified brick sidewalk and the grade thereof to be established, if possible, by the production of its records.

There was one important objection made by the city. Mrs. Gardiner was asked about this vitrified brick pavement, and was asked this question: "Was it put down by order of the city council?" She answered, "Yes, sir."

The attorneys for the city objected, but there was no ruling upon the objection. An objection to testimony will be deemed waived unless the objectors insist upon the objection being acted on by the court. See Hale v. Hale, 189 Ky. 171, 224 S. W. 1078; Keeton v. Mahan, 177 Ky. 85, 197 S. W. 519; Goodan v. Goodan, 184 Ky. 79, 211 S. W. 423; Johnson v. Johnson, 184 Ky. 131, 211 S. W. 557.

There was no direct evidence to show that this vitrified brick sidewalk was built upon the grade established by section 3 of the ordinance of 1895, but in the absence of such direct evidence, it will be presumed and inferred that the city built this vitrified brick sidewalk on the grade established by that ordinance.

The city is arguing here that there is no proof that this vitrified brick sidewalk was ever inspected, accepted, or any warrants issued against abutting property owners to pay for it. We do not understand that it would be necessary to prove that. The vitrified brick sidewalk, according to the proof, was built by the city in 1896, and evidently it met with the approval of the authorities, because it was allowed to remain undisturbed for 29 years, and it is not necessary that a warrant should be issued against a property owner if the property owner comes in and offers to pay, and the unquestioned proof here is that Mrs. Gardiner not only offered to pay, but did pay. There was no showing that the ordinance of 1895 was regularly adopted, but the city offered no evidence that it was not, and the records of the city were produced, the ordinance of 1895 was read in evidence from the book kept by the city, and it will be presumed that it was duly and regularly adopted. See 43 C. J. 579, 580.

Grounds 3 and 4 upon which the city sought a new trial really amount to the same thing, that is, that the court erred in not instructing the jury peremptorily to find for the city, and the whole basis of that argument is that there was no showing that a grade for this sidewalk had ever been adopted previous to 1925; but we have already disposed of that question adversely to the contention of the city.

The fifth and sixth grounds relied on for reversal are that the court erred in permitting the jury to view the premises, but we find no merit in that contention. The question the jury was trying was how much, if at all, was Mrs. Gardiner's property injured by the change in the grade of the sidewalk in front of it. There was evidence

from some witnesses that this sidewalk was raised about four feet above the grade of the vitrified brick sidewalk. There was evidence from others that it was only raised about 20 inches, but the weight of the evidence seems to be that it was raised about 34 inches, and those parties who testify that it was raised to this latter extent had measured it, while the others had merely estimated it. Under such circumstances, we cannot see any impropriety in allowing the jury to actually look at the property, nor can we think of any better evidence they could have of the condition than what they actually saw.

The seventh and eighth grounds on which the city sought a new trial, and upon which it relies now for reversal, are that this verdict is contrary to the law and the evidence, and is not supported by the evidence. Mrs. Gardiner sued for change both in the grade of the street, and in the grade of the sidewalk. The evidence indicated there had not been much change in the grade of the street. Possibly it may have been raised a few inches, but nothing to amount to anything, so her principal effort was made to show the injury to the market value of this property by the elevation of the sidewalk above the grade of the old one, thereby shutting off all opportunity of ingress or egress to or from her property. The city is contending that the grade of the street fixed the grade of the sidewalk, and that as Mrs. Gardiner failed to prove any material change in the grade of the street or that any grade of the street had been established prior to 1925, therefore she cannot recover for a change in the grade of the sidewalk; but the city is mistaken.

In the case of City of Earlington v. Newton, 215 Ky. 445, 285 S. W. 196, we said the grade of the sidewalk does not necessarily have to coincide with the grade of the roadway or street. In most cases, the grades are on different levels, and many times there is a big difference between the two levels.

In the case of City of Somerset v. Carver, 221 Ky. 552, 299 S. W. 191, we said: "If the grade of the sidewalk in front of plaintiff's property had been fixed . . . it would not have the effect of establishing the grade of the street." So that, even though the plaintiff did fail in her proof to establish her claim for injury to her property by changing the grade of the street, it does not follow that she cannot recover for the injury done it by the change in the grade of the sidewalk. There was no

proof that the grade of the street had ever been previously fixed, but we conclude that she did prove that the grade of the sidewalk had been previously fixed, and this question having been submitted to the jury under instructions not complained of, its verdict must stand.

The judgment is affirmed.